United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | Case No. 14-cr-00175-TEH<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS THE ALTERNATIVE FINES ACT SENTENCING ALLEGATIONS** |

This matter came before the Court on October 19, 2015 for a hearing on Defendant Pacific Gas & Electric ("PG&E")'s Motion to Dismiss the Alternative Fines Act Allegations. After carefully considering the parties' written and oral arguments, the Court now GRANTS IN PART PG&E's motion, for the reasons set forth below.

**BACKGROUND**

On September 9, 2010, a gas line owned and operated by PG&E ruptured, causing a fire that killed 8 people and injured 58 others. Superseding Indictment ¶ 5 (Docket No. 22). The fire damaged 108 homes, 38 of which were completely destroyed. *Id.* On July 30, 2014, a grand jury returned a superseding indictment ("Indictment") charging PG&E with 27 counts of violating the Pipeline Safety Act and one count of obstructing the National Transportation Safety Board ("NTSB") investigation that followed the explosion. *Id.* ¶¶ 61-75. The Indictment also seeks a fine exceeding the statutory maximum for these offenses under the Alternative Fines Act. *Id.* ¶ 76. The California Public Utilities Commission ("CPUC") has since penalized PG&E $1.6 billion for state regulatory violations stemming from the same conduct. Def.'s Mot. to Dismiss the Alternative Fines Act Sentencing Allegations ("Mot.") at 13 (Docket No. 126).

As to the Alternative Fines Act, the Government alleges that as a result of PG&E's Pipeline Safety Act violations, PG&E derived gross gains of approximately $281 million

and the victims suffered gross losses of approximately $565 million.  Indictment ¶ 76.  The $281 million gains figure is "based on PG&E's own submissions to the [CPUC] as the amount it would take to bring its pipeline system into compliance with federal regulations."  Opp'n to Mot. to Dismiss ("Opp'n") at 3 (Docket No. 147).  The $565 million losses figure "is based upon PG&E's own filings with the Securities and Exchange Commission as to what PG&E has paid to claimants related to the San Bruno explosion."  Opp'n to Mot. to Strike at 19 (Docket No. 36).

**DISCUSSION**

PG&E now moves to dismiss the Alternative Fines Act allegations.  PG&E argues: (1) proving alternative fines would "unduly complicate" the trial; (2) the Indictment failed to allege a lack of undue complication; and (3) the objectives of the Alternative Fines Act have already been met.

**I.    The Alternative Fines Act**

The Alternative Fines Act provides:

> If any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process.

18 U.S.C. § 3571(d).  As to the "undue complication" clause, the House Report from 18 U.S.C. § 3623(c) – the predecessor to § 3571(d) – described when calculation of alternative fines would be unduly complicated, and therefore inappropriate:

> [F]or example, if determining the amount of the defendant's gain were to require a protracted hearing that would last longer than the trial, the judge could decline to base the fine on the defendant's gain. The court's determination as to whether imposing a fine based on defendant's gain or victim's loss is discretionary, and the committee is confident that federal judges will not abuse this discretion.

H.R. Rep. No. 98-906 at 17 (1984).

Traditionally, judges had not only the discretion to determine whether alternative fines were appropriate, but also the power to determine fine-related sentencing facts and

United States District Court
Northern District of California

2

United States District Court
Northern District of California

the appropriate fine.  A pair of recent Supreme Court cases, however, have removed the latter power.  In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that the Sixth Amendment requires that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."  530 U.S. at 476.  And in *Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012), the Supreme Court held that "the rule of *Apprendi* applies to the imposition of criminal fines."  132 S. Ct. at 2357.

Courts have since held that *Apprendi* and *Southern Union* apply to Alternative Fines Act allegations.  *See, e.g.*, *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 147 (D.D.C. 2012) ("As is clear from . . . *Southern Union* and 18 U.S.C. § 3571(d), [] in order for the Court to impose a [gross gains] fine . . . , the U.S. Constitution requires that the jury find beyond a reasonable doubt that this amount constituted a 'gross gain' to [defendant] and that this amount was 'derive[d] ... from' the charged offenses.").

## II.     Litigating Losses Would Unduly Complicate the Trial

PG&E argues that the losses estimate in the Indictment is a "mirage," because the prior civil settlements "were (a) compromise agreements, (b) from a civil preponderance of the evidence standard, [and] (c) lump[ed] together all forms of damages, not just 'pecuniary loss.' "  Mot. at 2.  In reality, PG&E argues, the Government would face complex questions of actual and proximate causation at trial:

> The government would have to *start* by proving beyond a reasonable doubt that but for particular regulatory violations ultimately found by the jury to be criminal, the San Bruno accident would never have occurred. . . . And beyond that difficult question of but-for causation lie hundreds of even more difficult questions of *proximate* causation. The government would need to prove, with respect to each of the pecuniary losses, that there was no intervening cause of injury . . . .

*Id.* at 10 (emphasis in original).  Accordingly, PG&E argues, litigating losses would require "500 different mini-trials," including proof of "individualized issues like lost earnings and home values and hospital bills, all the while distinguishing the non-pecuniary harms that those victims also suffered."  *Id.* at 10-11.

3

United States District Court
Northern District of California

The Government does not challenge that proximate cause is the appropriate standard, and for good reason: "Construing § 3571(d) to require a proximate cause standard is consistent with the case law." *United States v. BP Products N. Am. Inc.*, 610 F. Supp. 2d 655, 688 (S.D. Tex. 2009). The Government responds only that it "intends to introduce the vast majority of the evidence that will be necessary to prove . . . victims' losses in its case-in-chief," (Opp'n at 3), without explaining what, if any, non-civil settlement based avenue it would pursue to prove losses at trial.

But the Court agrees with PG&E that civil settlements do not establish relevant losses under the Alternative Fines Act. *See BP Products*, 610 F. Supp. 2d at 702-03 ("[T]he amount of civil settlements does not equate to gross loss in a criminal fine. Such settlements are just that – settlements – and they include nonpecuniary damages such as pain and suffering, emotional distress, loss of consortium, and punitive damages."). And without the civil settlements simplification, the Court cannot imagine how the Government could prove the amount of gross losses proximately caused by PG&E's regulatory malfeasance beyond a reasonable doubt, without massively complicating the trial. The Government would need to prove that each victim's losses were proximately caused by the charged *offenses*, not by the *explosion* en masse. And just as the government conceded in *BP Products*, the Court believes that here, "showing the necessary causal link between the specific . . . violations charged and the explosion . . . would require 'methodically and carefully structure[d]' and highly technical proof" (610 F. Supp. 2d at 689), to say nothing of then connecting the explosion to the pecuniary losses suffered by each victim. Finally, as PG&E correctly notes, district courts facing far less complicated loss analyses have dismissed Alternative Fines Act allegations as unduly complex. *See, e.g.*, *United States v. Foote*, No. CR.A. 00-20091-01-KHV, 2003 WL 22466158, at *7 (D. Kan. July 31, 2003) (holding that loss calculation would be unduly complex because there was no reliable way to quantify the pecuniary losses in a counterfeit goods case).

PG&E's motion is therefore GRANTED with respect to the loss-based Alternative Fines Act allegations.

4

**III.     There Is Insufficient Information to Determine Whether Proving Gross Gains Would Unduly Complicate the Trial**

As to gains, PG&E likewise argues that the Indictment's estimate is a "mirage":

> [T]he jury could not simply look to system-wide investments that PG&E is making now and will make in the coming years to improve its operations and regulatory compliance.  It would have to identify—beyond a reasonable doubt—specific savings that PG&E obtained on each of the charged pipeline segments solely through non-compliance with each particular charged regulation.  And . . . because the regulated nature of the California natural gas industry means that when PG&E makes new investments its authorized rates also rise . . . a detailed and somewhat hypothetical regulatory ratemaking analysis [would be required] . . . to determine—beyond a reasonable doubt—what, if any, pecuniary gain may be reflected in past or future rates set by the CPUC.

Mot. at 2-3.  For support, PG&E cites *United States v. CITGO Petroleum Corp.*, 908 F. Supp. 2d 812 (S.D. Tex. 2012).  There the government sought an alternative fine based on CITGO's gains from operating a refinery without proper emission control devices, in violation of the Clean Air Act.  908 F. Supp. 2d at 813.  The district court rejected gains-based alternative fines under the undue complication provision because proof would involve 16 to 20 new witnesses, over 300 additional exhibits, and "another flurry of motions in limine."  *Id.* at 818.

The Court appreciates PG&E's arguments, and recognizes that proving gross gains may be a complex endeavor for the Government.  Indeed, it may involve many experts, or even the sort of ratemaking analysis that PG&E suggests will be necessary.  But the "undue complication" determination must be made in the context of the trial at hand.  And as PG&E has repeatedly argued, this trial "will already be one of the more complex criminal trials ever tried in this district."  Mot. at 2.  The trial may therefore tolerate a higher degree of Alternative Fines Act complexity than most, without triggering the undue complication clause.

At this point, however, the Government has stated only that it already plans to "offer evidence in its case-in-chief that PG&E's regulatory violations, which directly led to the San Bruno explosion, were motivated by the desire to maximize profits."  Opp'n at 3.

United States District Court
Northern District of California

Though this statement provides little guidance about how complex such evidence would be, the Court can conceive of ways to prove gross gains that would not be unduly complex in the context of a two-month[1] trial.  The Court therefore requires additional information before deciding whether allowing the Government to seek a gains-based alternative fine would "unduly complicate" the trial.  The Government is directed to submit, on or before **Monday, January 11, 2016**, notice of the sort of evidence and approximate number and type of witnesses that it intends to present to the jury regarding the gross gains PG&E derived from the charged offenses.  The Court will consider this proposal and, depending on its complexity, make a final determination whether allowing the Government to seek gains-based alternative fines would be appropriate.

In preparing this proposal, the Court encourages the Government to be mindful of the concerns raised by the district court in *BP Products*; specifically, that broad-based measures of cost-savings may create issues of causation complicated enough to trigger the undue complexity provision.  *BP Products*, 610 F. Supp. 2d at 669-702.

## IV.   "Undue Complication" Remains a Determination for the Court, Not an Element to Be Charged in an Indictment

PG&E next argues that even if proving gross gains or losses would not be unduly complicated, the Indictment fails because it does not charge a lack of undue complication as an *element* of the Alternative Fines Act allegation.  Mot. at 11-12.  But PG&E identifies the absurdity of this argument: "And if the necessary allegations *were* in the indictment, the question of whether Alternative Fines Act proof would unduly complicate or extend the trial would have to be submitted to the jury – raising the absurd specter of a preliminary trial about the trial, before the trial can begin."  *Id.* at 12 (emphasis in original).  Moreover, adopting PG&E's argument would contravene Congress' intent that the question of undue complication be left to the sound discretion of the courts.  H.R. Rep.

_____
[1]  Order for Pretrial Preparation at 1 (Docket No. 64).

No. 98-906 at 17 (1984).  Finally, PG&E concedes that all "other recent Alternative Fines Act cases" have left the complexity determination with the court, and cites no authority to support a departure from this trend in favor of the illogical alternative.  Mot. at 11.  The Court therefore finds ample reason to reject PG&E's argument that *Apprendi* and *Southern Union* require that undue complication is a "fact" that must be "charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 476.

## V.   PG&E's Payments of a State Fine and Civil Settlements Do Not Warrant Dismissal of the Alternative Fines Act Allegations

Finally, PG&E argues that "the purposes of the Alternative Fines Act have been satisfied here through other means," namely, through the CPUC penalty and civil settlements.  Mot. at 12-13.  But PG&E cites no authority to suggest that payments of state fines or civil settlements defeat the purposes of a criminal fine authorized by federal statute, other than to note that the Alternative Fines Act was intended to prevent defendants from profiting from their wrongdoing.  *Id.* at 3, 12-13.  In fact, the defendant in *BP Products* – a case PG&E cites frequently – had paid $1.6 billion in civil settlements and $21.7 million in other fines at the time of its plea.  610 F. Supp. 2d at 661.  Yet every party involved in that case – the court, government, victims, and defendant – nevertheless thought it appropriate that BP's sentence include an alternative fine of some sort.  The Court therefore finds PG&E's argument unsupported by its own authority, unpersuasive, and certainly not a basis for dismissing the Alternative Fines Act allegations.

//
//
//
//
//
//
//

7

**CONCLUSION**

For the reasons set forth above, PG&E's motion is GRANTED IN PART, as to loss-based alternative fines only.  The Government shall notify the Court by **Monday, January 11, 2016** of the witnesses and evidence it would rely on to prove gross gains at trial, as directed above.

**IT IS SO ORDERED.**

Dated:   12/08/15

_____

THELTON E. HENDERSON
United States District Judge

United States District Court
Northern District of California