LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
    steven.bauer@lw.com
  Margaret A. Tough (Bar No. 218056)
    margaret.tough@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
  Melissa Arbus Sherry (*pro hac vice*)
    melissa.sherry@lw.com
555 11th Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

CLARENCE, DYER & COHEN LLP
  Kate Dyer (Bar No. 171891)
    kdyer@clarencedyer.com
899 Ellis Street
San Francisco, California  94109-7807
Telephone: +1.415.749.1800
Facsimile: +1.415.749.1694

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | CASE NO. CR-14-00175-TEH<br><br>**DEFENDANT'S TRIAL MEMORANDUM**<br><br>**Judge:**  Hon. Thelton Henderson |

Defendant PG&E respectfully submits the following trial memorandum.

**MEMORANDUM**

The indictment charges a very detailed, technical case. As defendant's proposed Pipeline Safety Act jury instructions show, the charged elements require an evaluation of how PG&E pipeline engineers interpreted terms of art such as "gather and integrate," "evaluate," "prioritize as high risk," "maximum allowable operating pressure," and many others. Even the obstruction charge requires a detailed understanding of the engineering regulations, as the government's theory is that PG&E had a "policy," rather than a "practice" of assessing possible "manufacturing threats," "activated," by an increase in "operating pressure," despite the regulation's "MAOP plus 10%" reporting obligations for abnormal "pressure" increases on a "segment."

It is going to be a steep challenge for the lawyers and the Court to present these concepts in a succinct and clear enough fashion for lay jurors to master the material. And master the material they must, because the government is asking them to evaluate the judgments of experienced, professional engineers and to assess if these engineers clearly understood the regulations and intentionally violated them with an evil purpose and in bad faith. That is a very tough assignment for the jury.

It likewise is a tough assignment for the prosecution. Maybe this is why the government told the Court in a moment of candor 14 months after indictment "we do not know at this point how we are going to prove our case at trial." June 1, 2015 Hr'g Tr. 60:18-19 (Dkt. 96). Or why the government procured the indictment by resorting to a first-ever "collective intent theory," which it later tried to defend as "not something that is so out there that no one has recognized that it's a possible theory or a plausible theory in this case." October 19, 2015 Hr'g Tr. 35:22-24 (Dkt. 190).

Having received the government's witness list Wednesday evening (February 17) and having gathered the 30,000-odd pages of 972 exhibits it listed for us the previous Friday night (February 12), we can see that the prosecution's case will indeed be hard to prove. Its own evidence—culled from over 11 million pages of documents we produced and from its interviews

with or testimony from 42 PG&E employees—does not establish that a crime occurred. There is no testimony in which an engineer states that he or she or a colleague intentionally violated a clear regulation. Rather, even the government's witnesses discuss engineers striving to do their level best with new, unclear regulations—often while grappling with conflicting advice from the regulators themselves. Because none of its percipient witnesses appears to support its theory, the government has made the unusual request that the Court preemptively declare that *all* PG&E employees and contractors are necessarily "hostile" to the government.

From the witness list, exhibits, and motions *in limine*, however, an outline of the government's case is emerging. The government plans to compensate for its lack of specific evidence by seeing how much broadly negative and prejudicial evidence against PG&E the Court will permit. For example, it plans to call retired employees from back in the 1990s to testify that recordkeeping was poor back then. It plans to parade the damaged San Bruno pipe section before the jury and the press supposedly to show that it failed. It intends to publish photos of the fire burning in San Bruno—and to call a firefighter to describe his efforts to douse the flames—on the pretense of establishing that highly pressurized gas is dangerous. It hopes to call a purported expert witness to testify that budget-planning and rate-making reveal a "greedy" company, and paying executives competitive salaries is circumstantial evidence of evil intent. It seeks to call a former information manager who was not employed during the relevant time so she can tell her unsubstantiated tale about a mystery Post-It note left at her desk.

The government's strategy here is now becoming apparent. It intends to distract and seeks to prejudice. It will distract the jury with weeks of testimony not directed to a careful evaluation of the actual elements of the charged violations. And it will prejudice the jury by trying a case against a corporate logo and echoing the media reports that state as established fact issues that will be very much in evidentiary dispute in this trial. Notably, just yesterday, Sunday February 21, the government stated it opposes even the "concept" of a juror questionnaire aimed at identifying a fair jury in this highly publicized matter.

It is too much to ask the jury to sit through days of prejudicial testimony echoing five years of negative press coverage, followed by an instruction that they should focus on the narrow

elements of these charges. After such a presentation, how can they possibly be expected to evaluate the good faith of engineers' interpretations of regulatory terms—interpretations often shared by other operators and regulators—and assess whether their conduct was evilly motivated and intentionally incorrect? This is why the defense requested permission to file 35 motions *in limine*, to which the Court had such a strong negative reaction. But the government's proposed evidence is so far afield from the actual elements it must prove—and so viscerally prejudicial—that we fear that the government will lace the record with error in its opening statement.

At best, the government's proffered evidence and case theory aim to repeat a civil case or a regulatory hearing where the fact-finder must assess, under a preponderance of the evidence standard, whether a company should have done better. At worst, it aims to gain a conviction that virtually ensures a retrial.

Dated: February 22, 2016                                    Respectfully submitted,

By _____/s/_____
Steven M. Bauer
Margaret A. Tough
LATHAM & WATKINS LLP

Kate Dyer
CLARENCE, DYER & COHEN LLP

*Attorneys for Defendant*
*Pacific Gas and Electric Company*