BRIAN J. STRETCH (CABN 163973)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

HALLIE MITCHELL HOFFMAN (CABN 210020)
HARTLEY M. K. WEST (CABN 191609)
JEFFREY B. SCHENK (CABN 234355)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7129
    Fax: (415) 436-7234
    hallie.hoffman@usdoj.gov
    hartley.west@usdoj.gov
    jeffrey.b.schenk@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 14-00175 TEH (MEJ) |
| Plaintiff, | UNITED STATES' SUPPLEMENT TO EX PARTE MOTION FOR RULE 17 SUBPOENA AND MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| PACIFIC GAS AND ELECTRIC COMPANY, | |
| Defendant. | |

On March 28, 2016, U.S. Magistrate Judge Maria-Elena James granted in part the United States' application for Rule 17(c) subpoenas. Dkt. 408. The Court denied without prejudice the government's requests for certain additional records, finding that the government had not adequately established the relevance and admissibility of those records. *Id.* The government now supplements its application to offer additional bases for relevance and admissibility.

<u>Personnel Files</u>

The United States sought complete personnel files for all current and former PG&E employees who are on the government's Witness List (Category A). The Court determined that separation

U.S. SUPPLEMENT TO EX PARTE MOT. FOR RULE 17 SUBPOENA
CR 14-00175 TEH

agreements and attorney-retention agreements may be admissible for impeachment purposes, and therefore ordered disclosure of such records *in camera*, but found that the government had not established a sufficient likelihood that personnel files otherwise include relevant and admissible evidence. (Dkt. 408 at 9-14.)

The government intends to prove that PG&E tied its employees' compensation directly to company performance, as well as individual performance, through Performance Incentive Plans (PIPs), Short Term Incentive Plans (STIPs), and Long Term Incentive Plans (LTIPs). Declaration of Hartley M. K. West at ¶ 2. PG&E emails make this connection explicit. *Id.*, Exh. 1. So does PG&E's offer letter to its former Director of Information Management Compliance, Leslie McNiece. West Dec. ¶ 3, Exh. 2. The offer letter also shows that McNiece would be awarded stock, the value of which depends on company performance. *Id.* The performance appraisal of former Senior Vice President of Engineering and Operations, Ed Salas, clarifies that individual performance is assessed in part on meeting PG&E's expense and capital budgets and achieving company revenue targets. West Dec. ¶ 4, Exh. 3. Therefore the government has a specific, good faith basis for believing that employee offer letters, performance appraisals, incentive plans, and compensation (including stock and stock options) will demonstrate a nexus between employees' compensation and PG&E's financial performance, including the employees' role in meeting PG&E budgets and revenue targets. West Dec. ¶ 5.

This evidence is relevant to show, first, an employee's incentive to lower PG&E expenditures. The indictment alleges that PG&E willfully violated pipeline safety regulations, and the government's theory is that PG&E prioritized profits over safety. The government intends to argue that PG&E repeatedly deferred safety (integrity management) improvements to preserve company revenues (and with it, executive bonuses). That PG&E employees are incentivized to cut expenditures supports this argument. Second, the evidence is relevant to show that PG&E current and former employees have a financial incentive to testify favorably to PG&E because they own company stock. If PG&E is convicted of crimes based on this trial, it is reasonable to expect that PG&E stock may decline. Additionally, such evidence is admissible nonhearsay because the documents sought are statements of a party opponent (PG&E). Accordingly, this is not a fishing expedition. West Dec. ¶ 6.

///

Moreover, because a company acts through its employees, the government needs to call numerous PG&E employees (current and former) in its case-in-chief. It intends to elicit from these employees testimony about their actions and communications regarding the pipeline safety regulations, such as their records maintenance, pipeline safety threat assessments, and assessment prioritization practices. As it will be questioning these witnesses on direct, not cross-examination, it is important for the government to show the employees' financial bias on direct examination as well. Thus, this case differs from those where impeachment evidence is unnecessary until cross-examination. Here, the vast majority of the government's witnesses are the defendant's employees, with a financial incentive favoring the defendant. Indeed, PG&E has not included a single employee on its Witness List, so the government expects that its impeachment of PG&E employees will occur in the government's case-in-chief, on direct examination. For this reason, the government requests that the personnel records sought in this Supplement – as well as the separation agreements and attorney retention agreements for which the Court has already ordered production in camera – be provided before trial. West Dec. ¶ 7.

Weblinks

The government also supplements its request for the documents and data contained in the web links identified in certain emails (Category D).

1. 5/3/2010 email from Calvin Lui to William Manegold (PGE_DOJ_0874853);

The first weblink the government seeks is embedded in Government Exhibit 565. West Dec. at ¶ 3, Exh. 4. The Subject Line of Exhibit 565 is "MOP +10% Allowance for Manufacturing Seam Threat." In the email, written four months before the San Bruno explosion, PG&E Risk Management employee Calvin Lui asks his supervisor to review an embedded document so they could discuss, "since it seems to be a big issue with the audit looming." The embedded document is titled: <\\walnutcrk01\Mapping\RiskMgmt\Documentation\Weld Const Material Threats\MOPSeamIssues\_Documents\MOP 10% Allowance.doc>. West Dec. ¶ 8.

This document is highly relevant to numerous counts. The pipeline safety regulations required PG&E to assess activated manufacturing threats, and to prioritize such assessments. The regulations further provided that manufacturing threats were activated when a pipe's maximum operating pressure (MOP) was exceeded. PG&E is charged with willfully failing to comply with these regulations. The

government intends to prove PG&E's willful noncompliance in part through its practice of considering manufacturing threats activated only if maximum operating pressure was exceeded *by more than 10%* (its "10% allowance").  Because this document deals specifically with the MOP 10% allowance, there is every reason to believe contains relevant evidence of PG&E's 10% allowance practice, and thus direct evidence of its willful violations.  Indeed, this email was sent just before PG&E was to be audited. PG&E had been paying particular attention to its 10% allowance practice in anticipation of the audit, and Lui (the email's author) had been instructed to write a "white paper" that was supposed to justify the company's 10% practice.  West Dec. ¶ 9.

Moreover, Count One charges PG&E with obstructing the NTSB investigation following the San Bruno explosion.  Specifically, PG&E sent the NTSB (and its auditor, the CPUC) a letter dated April 6, 2011, in which it suggested that PG&E did not have, and never had, a 10% allowance.  The embedded document titled, in part, "MOP 10% Allowance" is direct evidence that the April 6, 2011, was false and/or misleading.  West Dec. ¶ 10.

### 2.   3/31/2011 email from Calvin Lui to William Manegold (PGE_DOJ_1209668)

The weblinks in Lui's March 31, 2011 email (Gov. Exh. 790) are relevant for similar reasons. West Dec. ¶ 4, Exh. 5.  In Exhibit 790, Lui advises his supervisor that he found two presentations – which are contained in the weblinks the government seeks through this Rule 17 subpoena – and that "[n]one discuss 10%."  The date of Lui's email is significant – it is six days before PG&E sends the obstructive letter to the NTSB.  PG&E appears to be preparing to deny its 10% allowance practice existed, and is checking for evidence to the contrary.  The government has a good faith basis to believe that these presentations are relevant.  Moreover, they are admissible nonhearsay as admissions of a party opponent.  West Dec. ¶ 11.

### 3.   10/14/2010 email from Thomas Crawford to Frank Dauby (PGE_DOJ_8561403)

Finally, the government seeks the folder located at L:\ENG\ILI_Team_(Frank_Dauby)\Peninsula Pipeline Records\L-132\L-132 PFL\L132FINALDOCS, as identified in an October 14, 2011 email to Frank Dauby (Gov. Exh. 634).  West Dec. ¶ 5, Exh. 6.  As the email explains, this file contains two spreadsheets, the work of "the L132 team."  The first spreadsheet "identifies all the discrepancies idenitified [sic]," and "is as accurate as we could make it."  West Dec. ¶ 12.

This spreadsheet is important evidence of PG&E's willful record-keeping violations. After Line 132 exploded, investigators confronted PG&E with the fact that its records database was riddled with errors regarding pipeline characteristics. Correct information about such characteristics is critical to an operator's ability accurately assess threats to a pipe's integrity. The "L132 team" undertook to determine all of the discrepancies between the pipeline characteristics reflected in its records database and its true characteristics. This chart appears to identify all of those discrepancies. These discrepancies will prove that PG&E did not maintain and integrate its data in compliance with the law. Further, the email and chart together show that, once PG&E bothered to dedicate the resources, it took only a few months to verify the line's pipe characteristics as the regulations require. Such evidence is therefore relevant and, as a statement of a party opponent, admissible nonhearsay. West Dec. ¶ 13.

DATED: March 31, 2016         Respectfully submitted,

                              BRIAN J. STRETCH
                              United States Attorney

                                   /s/
                              _____
                              HARTLEY M. K. WEST
                              Assistant United States Attorney