UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>              Defendant. | Case No.  14-cr-00175-TEH-1   (MEJ)<br><br>**ORDER RE: SUPPLEMENTAL *EX PARTE* APPLICATION FOR RULE 17 SUBPOENA**<br><br>Re: Dkt. No. 413 |

On March 28, 2016, the Court granted in part and denied in part the government's Application for the issuance of a subpoena to Defendant Pacific Gas and Electric Company ("PG&E") pursuant to Federal Rule of Criminal Procedure ("Rule") 17(c).  Mar. 28 Order, Dkt. No. 408[1]; *see also* Appl., Dkt. No. 312.  Among other things, the government sought the complete personnel files for all current and former PG&E employees who are on the government's Witness List (Request A), as well as the documents in the web links displayed on certain PG&E emails (Request D).  Appl. at 2-3.[2]  The Court found the separation and attorney-retention agreements may be admissible for impeachment purposes and ordered their disclosure for *in camera* review but otherwise denied the government's Application as to Request A without prejudice, finding that the government had not established a sufficient likelihood that personnel files otherwise include relevant and admissible evidence.  Mar. 28 Order at 9-14.  The Court also denied without prejudice Request D on similar grounds.  *Id.* at 21-22.

On March 31, 2016, the government filed a supplemental *ex parte* Application for the

---

[1] The applicable legal standard for Rule 17(c) subpoenas and the relevant procedural background are included in the Court's March 28 Order.

[2] A complete list of "the witnesses" as referred to in this Order can be found on page 1 of the first Application, as well as page 3 of the Court's March 28 Order.  However, as noted in that Order, Glen Carter is no longer included in the witness list, and accordingly none of the Court's orders regarding the government's Rule 17 subpoena requests relate to Mr. Carter.

1    issuance of a Rule 17(c) subpoena to "offer additional bases for relevance and admissibility" for

2    Requests A and D.  Suppl. Appl. at 1, Dkt. No. 413.  The government did not include a revised

3    subpoena or a proposed order.  *See* Crim. L.R. 17-2(a)(1).

4         As to Request A, the government explains it intends to call various PG&E employees

5    (current and former) in its case-in-chief on direct examination and seeks the witnesses' offer

6    letters, performance appraisals, and incentive plans and compensation data (including stock and

7    stock options) for two purposes.  First, it contends this evidence is relevant to show employees'

8    incentive to lower PG&E's expenditures, which the government indicates is germane to its

9    argument that "PG&E repeatedly deferred safety (integrity management) improvements to

10   preserve company revenues (and with it, executive bonuses)."  *Id.* at 2.  Second, it asserts "the

11   evidence is relevant to show that PG&E current and former employees have a financial incentive

12   to testify favorably to PG&E because they own company stock.  If PG&E is convicted of crimes

13   based on this trial, it is reasonable to expect that PG&E stock may decline."  *Id.*  As to

14   admissibility, the government states the documents it seeks are admissible as statements of a party

15   opponent (PG&E).  *Id.*  Finally, the government asks the Court to essentially reconsider its earlier

16   Order by requiring PG&E to produce the witnesses' separation and attorney retention agreements

17   to the government before trial.  *Id.*  It argues production before trial is appropriate given that the

18   government will call these witnesses during its case-in-chief rather than on cross-examination.  *Id.*

19        For Request D, the government now provides some context for the documents it seeks

20   within the emails' associated web links, including by providing the emails themselves and why the

21   government thinks those web links contain relevant information.  *Id.* at 3-5; *see also* Declaration

22   of Hartley M. K. West, Dkt. No. 413-1, Exs. 4-6, Dkt. Nos. 413-(4-6).  The government asserts the

23   web link in sub-request 1 "contains relevant evidence of PG&E's 10% allowance practice," which

24   the government contends will help prove PG&E's "willful noncompliance" with pipeline safety

25   regulations "in part through its practice of considering manufacturing threats activated only if

26   maximum operating pressure was exceeded by more than 10%[.]"  Suppl. Appl. at 3-4 (emphasis

27   omitted).  In sub-request 2, the government contends that the web links show PG&E reviewed

28   presentations because "it appears to be preparing to deny its 10% allowance practice existed, and

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1   [wa]s checking for evidence to the contrary." *Id.* at 4.  In sub-request 3, the government seeks two

2   spreadsheets that contain the work of "the L132 team," which the government contends

3   "undertook to determine all of the discrepancies between the pipeline characteristics reflected in

4   its records database and its true characteristics." *Id.* at 5.  The government argues the spreadsheet

5   will identify "important evidence of PG&E's willful record-keeping violations" by identifying

6   "discrepancies" in PG&E's data and "errors regarding pipeline characteristics" to help "prove that

7   PG&E did not maintain and integrate its data in compliance with the law." *Id.*  The government

8   asserts all these documents are admissible as statements by a party opponent. *Id.* at 4-5.

9        PG&E responded to the government's supplemental Application, arguing it should be

10  stricken as there is no pending motion to supplement and the government did not obtain leave to

11  supplement its prior Application.  Opp'n at 1, Dkt. No. 416.  It contends the government's

12  submission is "nothing more than a thinly-veiled motion for reconsideration that does not—and

13  cannot—comply with the local rule that it present new law or facts." *Id.*  Moreover, it argues the

14  government had all the same facts it now raises at the time of filing its initial Application and that

15  now "[t]he government is seeking an impermissible do-over." *Id.* at 1-3; *see also* Declaration of

16  Aaron Chiu ¶¶ 2-7, Dkt. No. 417.  The government did not respond to PG&E's objections.

17       The Court acknowledges PG&E's frustration, which is compounded by the fact that, at the

18  time of filing its initial Application, the government apparently (1) had a more narrow purpose in

19  seeking the witnesses' personnel files—and actually only sought specific portions of those files—

20  and (2) could have provided the necessary background about the web links to give the Court more

21  of a basis for assessing their relevance.  Moreover, the government's supplement does not include

22  a revised subpoena or a proposed Order, leaving the Court to speculate as to how the government

23  intends to modify its subpoena.  While the Court originally denied without prejudice Requests A

24  and D, the government's supplement does not revisit this matter in an appropriate way. *See* Crim.

25  L.R. 17-2(a)(1) (requiring a party requesting a Rule 17(c) subpoena to either file a noticed motion

26  pursuant to Criminal Local Rule 47-2 or for "good cause" an *ex parte* motion); *see also* Crim. L.R.

27  47-2 (noticed motion procedures); Crim. L.R. 47-3 (*ex parte* motion procedures).

28       Despite the foregoing, given the encroaching trial date, the Court finds good cause exists to

1    treat the government's supplemental application as an *ex parte* motion.  Furthermore, as the

2    Court's prior Order denied without prejudice portions of the government's initial Application, but

3    did so on the same day as the discovery cut-off date, the Court finds the government's present

4    motion timely under the circumstances.

5           Turning to the government's Requests, as to Request A, in light of the government's

6    proffers as outlined above, the Court finds that the government may issue a subpoena for the

7    witnesses' employee offer letters and performance appraisals.  The government's supporting

8    declaration and proffers provide facts and a good faith basis to find these documents meet *Nixon*'s

9    relevance, specificity, and admissibility requirements and are not otherwise procurable reasonably

10   in advance of trial by exercise of due diligence.  *See United States v. Nixon*, 418 U.S. 683, 699-

11   700 (1974).  The government has adequately explained the evidentiary purpose of these

12   documents at trial to support its argument that PG&E allegedly put profits before safety.

13          This same basis also provides support for obtaining information related to witnesses'

14   incentive plans and certain compensation data.  While the government's general request for

15   "incentive plans" is somewhat vague, documents that show (1) the types of incentive plan(s) the

16   witness was actually enrolled in while he or she worked for PG&E, (2) the nature of those plans,

17   and (3) whether the witness ever received payments as a result of an incentive plan are relevant to

18   show how PG&E may have incentivized employees to make profits or so-called "revenue targets"

19   employees' paramount concern, perhaps at the expense of safety.  Similarly, compensation data as

20   to the witnesses' base salary may be relevant as a comparison point to show how PG&E used

21   incentive payments to motivate employees beyond regular salary payments and why witnesses

22   may have had more motivation to meet the targets in the incentive plans.  Thus, while the

23   government has not shown that its broad requests for general incentive plans and compensation

24   data seek relevant and evidentiary information, more narrowly tailored requests as described

25   above satisfy the *Nixon* requirements.

26          That said, in its arguments related to Request A, the government has also requested that the

27   witnesses' separation and retention agreements be produced to the government in advance of trial.

28   However, PG&E is correct that the government's request in this respect is in essence a motion to

United States District Court
Northern District of California

4

1    reconsider, which the government has not properly asserted in this supplement.  *See* Crim. L.R.

2    2-1; Civ. L.R. 7-9.  As such, this request is denied.

3            As to Request D, the Court finds the government's new proffers and supporting evidence

4    meet the *Nixon* requirements for the issuance of a subpoena for the documents in the emails' web

5    links.  The government has shown that it makes a good faith effort to obtain evidence to support

6    the counts in its indictment, such as evidence that may show PG&E's willfulness in allegedly

7    violating pipeline safety regulations and what PG&E's true policy was regarding the so-called

8    "10% allowance practice."  *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 219-20 (1951)

9    (the party requesting a Rule 17(c) subpoena must show that the materials sought are evidentiary or

10   at least that the request makes a "good faith effort . . . to obtain evidence.").

11           Based on the foregoing, the government may issue Request D of the subpoena in its first

12   Application (Dkt. No. 312 at 3) in its current form.  However, the Court modifies Request A to

13   require only the production of the witnesses' employee offer letters, performance appraisals,

14   separation agreements, retention agreements, and incentive plans and compensation data from

15   PG&E.  For purposes of this Order and the related subpoena, "incentive plans and compensation

16   data" refers to information reflecting (1) the types of incentive plan(s) the witness was enrolled in

17   while he or she worked for PG&E, (2) the nature of those plans (i.e., how an employee could be

18   compensated under the plan), (3) whether the witness ever received payments as a result of an

19   incentive plan, and (4) the witnesses' base salary.  Furthermore, in accordance with the March 28

20   Order, the separation agreements and retention agreements shall be lodged with the Court for *in*

21   *camera* review.  *See* Mar. 28 Order at 23.  The government's supplemental Application is thus

22   **GRANTED IN PART** and **DENIED IN PART** as stated above.

23           **IT IS SO ORDERED.**

24

25   Dated: April 7, 2016

26                                                      _____

27                                                      MARIA-ELENA JAMES
                                                        United States Magistrate Judge

28

United States District Court
Northern District of California