1   LATHAM & WATKINS LLP
        Steven M. Bauer (Bar No. 135067)
2           steven.bauer@lw.com
        Margaret A. Tough (Bar No. 218056)
3           margaret.tough@lw.com
    505 Montgomery Street, Suite 2000
4   San Francisco, California  94111-6538
    Telephone:  +1.415.391.0600
5   Facsimile:  +1.415.395.8095

6   LATHAM & WATKINS LLP
        Melissa Arbus Sherry (*pro hac vice*)
7           melissa.sherry@lw.com
    555 11th Street, NW, Suite 1000
8   Washington, DC  20004-1304
    Telephone:  +1.202.637.2200
9   Facsimile:  +1.202.637.2201

10  CLARENCE DYER & COHEN LLP
        Kate Dyer (Bar No. 171891)
11          kdyer@clarencedyer.com
    899 Ellis Street
12  San Francisco, California  94109-7807
    Telephone:  +1.415.749.1800
13  Facsimile:  +1.415.749.1694

14  Attorneys for Defendant
    PACIFIC GAS AND ELECTRIC COMPANY

15

16                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
17                    SAN FRANCISCO DIVISION

18

19  UNITED STATES OF AMERICA              CASE NO. CR-14-00175-TEH

20          v.                           **DEFENDANT'S MOTION TO CONTINUE
                                         TRIAL DATE FOR LATE-DISCLOSED
21  PACIFIC GAS AND ELECTRIC             EVIDENCE**
    COMPANY,
22                                       **Judge:    Hon. Thelton E. Henderson**
                Defendant.               **Date:     TBD**
23                                       **Time:     TBD**
                                         **Place:    Courtroom 2, 17th Floor**
24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE that at a time to be determined, Defendant Pacific Gas and

3  Electric Company ("PG&E") will and hereby does move this Court for:  (1) an order continuing

4  the trial currently set to begin April 26, 2016 for a minimum of six weeks; (2) an order

5  compelling the government to produce all attachments to the claimed "Jencks" productions; and

6  (3) an order reaffirming the Court's prior order compelling the government to search for and

7  produce all *Brady* material.

8      Because trial is scheduled for April 26, the defendant also respectfully moves the Court

9  to set an expedited briefing schedule for the Motion.

10     The Motion is based on this Notice of Motion and accompanying Memorandum of Points

11 and Authorities, the accompanying Declaration of Clare K. Toney ("Toney Decl."), the files and

12 records of this case, and such other argument and evidence as the Court may consider.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1

# TABLE OF CONTENTS

2

Page

3  **I.**  **INTRODUCTION** ........................................................................................... 1

4  **II.**  **BACKGROUND** ............................................................................................ 3

5  A.  April 2015: The First Round ................................................................ 3

6  B.  September 2015:  The Second Round .................................................... 4

7  C.  December 2015:  The Third Round ....................................................... 4

8  D.  The Government's Productions:  January and February, 2016............. 5

9  E.  March 2016:  The Fourth Round ........................................................... 5

10  F.  The March 7, 2016 Pretrial Conference ................................................ 5

11  G.  The Government's Productions Between the Two Pretrial
    Conferences ........................................................................................... 6

12
13  **III.**  **DISCUSSION** ................................................................................................ 7

    A.  Legal Standards ..................................................................................... 7
14
15  B.  The Government Has Produced Critical Evidence on the Eve of
    Trial ...................................................................................................... 11

16  1.  Mens Rea:  Insufficient Evidence to Prove a Crime ............... 11

17  2.  Clarity of the Regulations ....................................................... 12

18  3.  Prior PHMSA Enforcement Activity ...................................... 14

19  4.  PG&E Knowledge Of Seam Threats ....................................... 15

20  5.  The 10% Issue and BP ............................................................. 16

21  **IV.**  **RELIEF REQUESTED** ............................................................................... 17

22  **V.**  **CONCLUSION** ............................................................................................ 18

23
24
25
26
27
28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

*Amado v. Gonzalez,*
    758 F.3d 1119 (9th Cir. 2014) ............................................................................. 7

5

*Brady v. Maryland,*
    373 U.S. 83 (1963) ............................................................................................... 7

6

7

*Giglio v. United States,*
    405 U.S. 150 (1972) ............................................................................................. 7

8

*Leka v. Portuondo,*
    257 F.3d 89 (2d Cir. 2001) ............................................................................. 8, 9

9

10

*United States v. Agurs,*
    427 U.S. 97 (1976) ............................................................................................... 7

11

*United States v. Aichele,*
    941 F.2d 761 (9th Cir. 1991) ............................................................................... 8

12

13

*United States v. Anderson,*
    509 F.2d 312 (D.C. Cir. 1974) ........................................................................... 10

14

*United States v. Budziak,*
    697 F.3d 1105 (9th Cir. 2012) ............................................................................. 8

15

16

*United States v. Burke,*
    571 F.3d 1048 (10th Cir. 2009) ........................................................................... 9

17

*United States v. Delgado-Marrero,*
    744 F.3d 167 (1st Cir. 2014) ............................................................................. 10

18

19

*United States v. Dominguez,*
    No. 14-10507, 2016 WL 761177 (9th Cir. Feb. 26, 2016) .................................. 9

20

*United States v. Gordon,*
    844 F.2d 1397 (9th Cir. 1988) ............................................................................. 8

21

22

*United States v. Hernandez-Meza,*
    720 F.3d 760 (9th Cir. 2013) ............................................................................... 8

23

*United States v. Ivy,*
    83 F.3d 1266 (10th Cir. 1996) ........................................................................... 11

24

25

*United States v. James,*
    366 U.S. 213 (1961) ............................................................................................. 3

26

*United States v. Jennings,*
    960 F.2d 1488 (9th Cir. 1992) ............................................................................. 9

27

28

*United States v. Johnston,*

127 F.3d 380 (5th Cir. 1997) ................................................................................. 9

*United States v. Josleyn,*
  99 F.3d 1182 (1st Cir. 1996) ............................................................................. 8

*United States v. Olson,*
  697 F.2d 273 (8th Cir. 1983) ........................................................................... 10

*United States v. Price,*
  566 F.3d 900 (9th Cir. 2009) ............................................................................. 7

*United States v. Sepulveda,*
  15 F.3d 1161 (1st Cir. 1993) ........................................................................... 10

*United States v. Spry,*
  238 F. App'x 142 (6th Cir. 2007) ................................................................... 11

*United States v. Starusko,*
  729 F.2d 256 (3d Cir. 1984) ............................................................................. 8

*United States v. Stevens,*
  380 F.3d 1021 (7th Cir. 2004) ......................................................................... 9

*United States v. Stever,*
  603 F.3d 747 (9th Cir. 2010) ........................................................................... 8

*United States v. Williams,*
  132 F.3d 1055 (5th Cir. 1998) ....................................................................... 11

*United States v. Williams,*
  576 F.3d 385 (7th Cir. 2009) ......................................................................... 10

*United States v. Woodley,*
  9 F.3d 774 (9th Cir. 1993) ............................................................................... 8

**OTHER AUTHORITIES**

Fed. R. Crim. P. 16, 1993 amend. advisory committee's note ................................... 8

**RULES**

Fed. R. Crim. P. 16(a)(1)(E) ....................................................................................... 8

Fed. R. Crim. P. 16(d)(2) ..................................................................................... 9, 10

Fed. R. Crim. P. 6(e)(3)(B) ....................................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

PG&E would very much like to start and to complete this trial as soon as practicable. Now, five and a half years after the tragic San Bruno rupture, it is time to move forward. But the prosecution has made an additional delay absolutely necessary for our client to receive a fair trial.

Following the first pretrial conference, the Court postponed trial by five weeks with the expectation that, in that time period, the government would complete its disclosure obligations and the defendant would be able to incorporate any new evidence into its trial strategy and trial presentation. As briefly outlined in court Tuesday, however, the government continued to resist and to delay disclosing evidence during that month. It was not until April 8 that the government disclosed critical pro-defense documents. And then, on the eve of the second pretrial conference, the government finally disclosed a mountain of 110,000 pages of documents it had been withholding as privileged.

The recent productions contain evidence that is not of marginal relevance. To the contrary, they contain evidence touching on virtually every key issue in the case: the 10% buffer issue, *mens rea*, clarity of the regulations, and PHMSA's enforcement actions against other operators.

Perhaps the most important fact for the Court to recognize is that the government withheld these documents until April 11, 2016 *despite the Court's June 29, 2015 order calling for their production.* This is not a case of last-minute requests for nice-to-have documents. These documents are the critical documents for the defense case, which we identified and requested more than a year ago. Once the defendant is able to review these documents, we can finally put together the trial defense that we have always believed this case requires.

The defendant's record of diligent requests has been met with the government's string of defeated reasons for withholding the evidence. First, the government argued the evidence was irrelevant (the Court disagreed and ordered the documents disclosed). Second, the government claimed the agencies lacked the resources to produce it (the Court disagreed and ordered the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1   documents produced).  Third, the government purported not to understand the order (the Court

2   ordered the production again).  Fourth, the government assured everyone that it understood and

3   had already complied with its constitutional and Rule 16 obligations.  Fifth, the government

4   asserted a laundry list of privileges (including attorney-client, work product, deliberative process,

5   third party confidentiality, rule-making, and even something it called "Congressional

6   communications").  The government, however, could never substantiate these claimed privileges

7   with any legal authority or factual support.  In fact, it refused even to discuss them in any detail

8   with the defense.  But when Judge James ordered the government to file by April 8 a brief

9   justifying its almost year-long privilege positions, the government suddenly opted to produce the

10  documents (while insisting on an unusual protective order ).  The defendant's efforts eventually

11  paid off—but not until the eve of the second pretrial conference and two weeks before trial.

12          In this brief, first we attempt to lay out the basic facts showing how it came to be that the

13  government delayed until after motions *in limine* were filed to disclose about 600,000 pages of

14  evidence it was required to produce seven months earlier, including over 229,000 pages

15  produced since the first pretrial conference alone.  Next, we try to explain in shorthand form the

16  importance of some categories of the documents we have received and been able to review since

17  the pretrial conference.  This discussion gets a bit detailed, but it is important for the Court to

18  gain some understanding of  how critical these documents will be to the defendant's trial

19  strategy, opening statement, exhibit list, witness list, and cross-examination plans.  Finally, we

20  provide our view on the scheduling issues caused by this huge, late document production.  In

21  sum, recognizing our client's desire to bring this case to a conclusion as soon as reasonable, we

22  predict that, with significant effort and expense, we can review the evidence and assimilate it

23  into our trial presentation in six to eight weeks.[1]

24

25

26

27  [1]   This would raise a previously disclosed trial scheduling conflict for the defendant's lead
    counsel in *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, Case No. SACV11-01062 JVS (ANX)
28  (C.D. Cal.).  The defendant certainly has no objection to this Court communicating directly with
    Judge Selna about the conflicting schedules.

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

## II.      BACKGROUND

The defendant initially requested complete disclosure of all *Brady* material and 25 categories of Rule 16 materials in a detailed letter on June 19, 2014.  Dkt. 72-6.  Over a year ago, the Court set a schedule under which the case would have proceeded in an orderly fashion.  Dkt. 64.  Following that schedule, the defense again sought this critical evidence on March 25, 2015.  Dkt. 72-19.  When these requests were not successful, we turned to the Court.

### A.      April 2015: The First Round

On April 27, 2015, the defendant filed a motion for Rule 16 and *Brady* materials, seeking evidence concerning other pipeline operators and the development and enforcement of the charged regulations.  The government resisted, arguing that "PHMSA information regarding other operators' interpretations of the regulations at issue, and PHMSA's audit and enforcement actions" went "well beyond the government's discovery obligations" and were "irrelevant to whether PG&E knowingly and willfully violated the regulations."  Dkt. 78 at 8-9.  During the hearing on that motion, the government went further—arguing not only that the material sought was "wholly irrelevant," but also that meeting the request "would have the potential of shutting down the small agency" for what it derided as a "rank fishing expedition."  Dkt. 96 (6/1/15 Tr.) at 25:10-15; 35:16-22.  The government also firmly maintained that neither PHMSA nor the NTSB was part of its "prosecution team."  Dkt. 78 at 4-5.

The Court disagreed.  On June 29, 2015, the Court granted defendant's  motion in part, finding that evidence concerning other operators was material to the defense:

> The question of whether the regulations at issue in this case are so unclear as to preclude a finding of willfulness is not now before the Court.  Rather, the question is whether agency statements regarding these regulations to other pipeline operators, and evidence of other operators' interpretations of these regulations, are material to the defense.  The answer is certainly "yes."

Dkt. 103 at 8.

The Court also recognized that, "in some cases the law itself may be so uncertain or debatable that a defendant cannot be said to have willfully violated it, even where the defendant's subjective intent suggests guilt."  Dkt. 103 at 6 (citing *United States v. James*, 366 U.S. 213, 221-22 (1961)).  Accordingly, the Court  ordered production of internal PHMSA and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

NTSB interpretations of the charged regulations in part because "the clarity of the regulations and the reasonableness of PG&E's interpretations are still at issue."  Dkt. 103 at 9.  The Court also ordered the government to provide privilege logs as soon as they were completed.  *Id.* at 29.

### B.    September 2015:  The Second Round

Notwithstanding the Court's order, over the next several months the government insisted that the order did not say what it said and refused to produce much of what it had been compelled to provide.  In September—with substantive pretrial motions due—the defense had no alternative but to move to enforce the Court's June order, noting our concern that "closing in on four months since the Order, and with less than five months until trial, the government has refused to comply with important items the Court ordered it to produce."  Oct. 21, 2015 Hr'g Tr. (Dkt. 190) at 51:9-19.  The government objected, recycling its previous argument that the material concerning other operators and the agencies' interpretation of the charged regulations was not "relevant."

Again, the Court disagreed, explaining that it was "inappropriate for the Government to apply any limitation . . . to the Court's order that the Government produce 'all evidence that contains' '[i]nterpretations of regulations by PHMSA.'"  It held similarly for materials from the NTSB.  Dkt. 195 at 5.

The government reacted to this second order with alarm, claiming that it somehow had misunderstood the prior order, and once again predicting that it would take significant agency resources and "months" to comply—especially since it had not asked the agencies even to begin collecting the materials in the four-plus months since the first order.  *See* Dkt. 282-1; 282-2.

### C.    December 2015:  The Third Round

In light of the government's response, and concerned about the impending trial date, on December 4, 2015, the defense sought leave to file additional motions to address the many outstanding discovery issues, including the government's persistent (yet unsubstantiated) claims of privilege over the Court-ordered materials and for a date certain that discovery would be complete.  Dkt. 198.  On December 7, the Court referred all discovery matters to Judge James.  Dkt. 200.  In the face of joint discovery letter briefs to Judge James, the government ultimately

agreed to provide much of what the defendant sought, but stated it could not complete the

PHMSA or NTSB production until January 31, 2016.  Dkt. 207 at 2-3.  PG&E sought an order

confirming the government's promised dates.  The Magistrate Judge declined:

> PG&E seeks an order confirming these deadlines. As the parties meet and confer
> efforts have been fruitful, and PG&E has not shown any reason the government
> will not comply with their agreement, the Court finds an order premature and
> unnecessary at this time.

Dkt. 208.  Based, in part, on their "expectation that the government will make additional

discovery productions on or before December 31, 2015," the parties stipulated to a one-week

continuance of the motions *in limine*, with no continuance of the trial date.  The defense

requested leave to file additional motions *in limine* as to materials produced after January 11,

2016.  The Court entered this stipulation.  Dkt. 213.

### D.       The Government's Productions:  January and February, 2016

In three January 2016 productions, the government disclosed approximately 71,500 pages

of expert, Alternative Fines Act and other evidence.  In February, the government followed up

with five more productions, totaling an additional 278,000 pages, the majority which were a

voluminous production of PHMSA and NTSB materials.  However, the government's February

22 production included what it termed "Jencks materials" which, though heavily redacted,

contained highly relevant *Brady* material.

### E.       March 2016:  The Fourth Round

In the week leading up to the first pretrial conference on March 7, the government made

three additional productions—including one literally on the eve of the pretrial conference.

Because the government was continuing to withhold significant additional materials, the defense

raised five additional discovery issues  before Judge James.  Dkts. 331, 332, 333, 334 and 335.

### F.       The March 7, 2016 Pretrial Conference

At the original pretrial conference, the defense was compelled to ask for a brief

continuance of the trial date based on the outstanding discovery.  The Court agreed, recognizing

"[t]he many unresolved issues, and the unsettled state of discovery" and ordered a five week

continuance "to guarantee that the many unresolved issues in this case are given full and fair

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1   consideration before the start of trial." Dkt. 369.  Trial was rescheduled to April 26 and a new

2   pretrial conference was set for April 12.  *Id.*

3   ### G.   The Government's Productions Between the Two Pretrial Conferences

4   While the government continued to provide long-overdue discovery after the March 7

5   pretrial conference, including over 100,000 additional pages before March 30, the two

6   productions on Friday, April 8 and Monday, April 11 (literally the eve of the second pretrial

7   conference—which the Court had continued in order to ensure that discovery could be

8   completed) were remarkable.

9   The Friday production was an "unredacted" set of what the government characterized as

10   "Jencks materials" it previously had produced with heavy redactions on February 22.  The

11   defense had asked Judge James to compel production of an unredacted set and, in opposing this,

12   the government assured the Court that:

13   > [t]he trial attorneys have now scrutinized the emails for anything conceivably
14   > subject to discovery on any basis, unredacted several portions of emails . . . [and
     > because] the United States is aware of the nature of the information that has been
     > redacted, [it] has determined that none of it is exculpatory, and presently sees no
15   > impeachment value in it.

16   Dkt. 404.  On April 4, Judge James declined to order further disclosures, but urged the

17   government to bear in mind its *Brady* obligations and to "err on the side of transparency."  Dkt.

18   419 at 22.  The government then produced 685 pages of unredacted documents on Friday, April

19   8 (though it continues to withhold more than 30 email attachments which are integral to

20   understanding these emails).  This also included at least 18 new documents that it had never

21   before produced.  As set forth below—and contrary to the government's assurances—these

22   emails reveal significant *Brady*, Rule 16 and impeachment material.

23   Three days after it finally produced those unredacted documents, the government made a

24   huge production the day before the pretrial conference.  This 110,000 page production, of

25   PHMSA and NTSB materials, was a dramatic about-face after months and months of foot-

26   dragging.  Ten months ago, the Court ordered the government to produce privilege logs for any

27   withheld PHMSA and NTSB materials.  Dkt. 103.  The defense reviewed the logs when they

28   were produced and questioned the basis for the broad agency privilege assertions at least 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1    times, providing substantial authority that the documents described could not be privileged.

2    Toney Decl. ¶ 19.  The government never responded.  Finally, on April 4, Judge James ordered

3    the government to articulate the bases for its privilege claims by April 8.  On April 7, the

4    government reversed course and agreed to produce all previously-withheld materials subject to a

5    protective order.  The defense received this 110,000 page production the day before the second

6    pretrial conference.[2]  While we have only started our review of that material (*see* Dkt. 450),

7    based on the privilege log entries, it is certain to contain critical evidence about the development

8    and interpretation of the charged regulations.  We will continue to provide the Court with the

9    updates it ordered about our progress.  Because of the complex nature of the regulations, it is a

10   painstaking review.

11   **III.    DISCUSSION**

12          **A.    Legal Standards**

13          The Fifth Amendment's Due Process Clause grants defendants a constitutional right to

14   receive all "evidence favorable to an accused" that is "material either to guilt or to punishment."

15   *Brady v. Maryland*, 373 U.S. 83, 87 (1963).[3]  *Brady* material includes anything "which might

16   reasonably be considered favorable to the defendant's case even if the evidence is not admissible

17   so long as it is reasonably likely to lead to admissible evidence."  *United States v. Price*, 566

18   F.3d 900, 913 n.14 (9th Cir. 2009) (citations omitted).  Evidence is "favorable" to the

19   defendant's case if it "helps bolster the defense case or impeach the prosecutor's witnesses."  *Id.*

20   "[T]he prudent prosecutor [should] resolve doubtful questions in favor of disclosure."  *United*

21   *States v. Agurs*, 427 U.S. 97, 108 (1976).

22          Similarly, the Federal Rules of Criminal Procedure require the government to disclose all

23   documents, data, or tangible items in its "possession, custody, or control" that "are material to

---

[2]    That large production was also missing attachments.  Today, Judge James ordered the government to provide that information and produce all attachments by April 20. Dkt. 451.  The defendant will not have a chance to review these materials until just six days before trial.

[3]    In this motion, "*Brady* material" is meant to include all exculpatory material under *Brady* and its progeny.  *See, e.g.*, *Giglio v. United States*, 405 U.S. 150, 154 (1972) (extending *Brady* to impeachment materials); *Amado v. Gonzalez*, 758 F.3d 1119, 1134 (9th Cir. 2014) ("Favorable evidence is not limited to evidence that is exculpatory"; it includes evidence that "impeaches a prosecution witness.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1  preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Evidence is "material" so long as "the

2  information" would "help[]" the defendant develop "a possible defense," *United States v.*

3  *Budziak*, 697 F.3d 1105, 1111 (9th Cir. 2012), or "cause[] a defendant to completely abandon a

4  planned defense and take an entirely different path," *United States v. Hernandez-Meza*, 720 F.3d

5  760, 768 (9th Cir. 2013) (quotation marks and citation omitted). The Ninth Circuit considers

6  Rule 16 a "broad right to discovery," *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010),

7  and has strongly encouraged the government "to turn over whatever evidence it has pertaining to

8  the case." *Hernandez-Meza*, 720 F.3d at 768.

9      To be effective, disclosure under the constitution and the federal rules must be timely.

10  The government is required to disclose favorable evidence to the defense "at the earliest feasible

11  opportunity," *United States v. Starusko*, 729 F.2d 256, 264 (3d Cir. 1984), and, indeed, due

12  process demands disclosure be made while "it is still of substantial value to the accused," *United*

13  *States v. Woodley*, 9 F.3d 774, 777 (9th Cir. 1993). Delays that deprive the defendant of a

14  "substantial opportunity to use [the] information at trial" can be the basis for reversible

15  constitutional error. *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991); *see also United*

16  *States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988); *Leka v. Portuondo*, 257 F.3d 89, 103 (2d

17  Cir. 2001) ("The opportunity for use under *Brady* is the opportunity for a responsible lawyer to

18  use the information with some degree of calculation and forethought."). Rule 16 disclosures

19  must also be made in a "timely fashion," *United States v. Josleyn*, 99 F.3d 1182, 1195 (1st Cir.

20  1996); *see Woodley*, 9 F.3d at 776 ("The government failed to timely disclose *Brady* and Rule 16

21  materials."); *cf.* Fed. R. Crim. P. 16, 1993 amend. advisory committee's note (timely disclosure

22  of experts under Rule 16 is required to "minimize surprise" and "to provide the opponent with a

23  fair opportunity to test the merit of the . . . testimony through focused cross-examination").

24      Prompt disclosure is an integral part of the discovery process, because "the belated

25  revelation of [material information] might meaningfully alter a defendant's choices before and

26  during trial [such as] how to apportion time and resources to various theories when investigating

27  the case, whether the defendant should testify, whether to focus the jury's attention on this or that

28  defense, and so on." *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009). When a

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1   disclosure "is first made on the eve of trial, or when trial is under way, the opportunity to use it

2   may be impaired.  The defense may be unable to divert resources from other initiatives and

3   obligations that are or may seem more pressing.  And the defense may be unable to assimilate the

4   information into its case." *Leka*, 257 F.3d at 101.  Permitting such conduct by the government

5   "would create dangerous incentives for prosecutors to withhold impeachment or exculpatory

6   information until after the defense has committed itself to a particular strategy during opening

7   statements or until it is too late for the defense to effectively use the disclosed information."

8   *Burke*, 571 F.3d at 1054.

9          District courts have broad authority to cure any prejudice caused by the delayed

10  disclosure.  *See United States v. Johnston*, 127 F.3d 380, 391 (5th Cir. 1997) (district court has

11  "real latitude" to fashion remedy for delayed disclosure); Fed. R. Crim. P. 16(d)(2) ("If a party

12  fails to comply with this rule, the court may . . . enter any other order that is just under the

13  circumstances."); *see also Burke*, 571 F.3d at 1054-55; *United States v. Stevens*, 380 F.3d 1021,

14  1025-26 (7th Cir. 2004).  Although courts tend to refrain from specifying ex ante the procedures

15  through which the government must satisfy its *Brady* obligations, *see* Dkt. 103 at 3, the "self-

16  executing" nature of the government's *Brady* obligations does not remotely prevent a court from

17  intervening to prevent prejudice to a defendant where those obligations have not been met.  *See*

18  *United States v. Jennings*, 960 F.2d 1488, 1491-92 (9th Cir. 1992) (court intervention is

19  appropriate where there is "a clear basis in law or fact to believe that [interference is]

20  necessary").  A court may address late-disclosed evidence, for example, "by granting a

21  continuance to allow the defense to review late-produced evidence, recalling government

22  witnesses, instructing the jury why the trial was being delayed and the witnesses recalled,

23  allowing the defense to give second opening statements after the government rested, and striking

24  some of the government's key testimony."  *United States v. Dominguez*, No. 14-10507, 2016 WL

25  761177, at *1 (9th Cir. Feb. 26, 2016); *see also Burke*, 571 F.3d at 1054-55 (appropriate

26  remedies include "exclusion of the witness, limitations on the scope of permitted testimony,

27  instructions to the jury, or even mistrial. . . .  Fed. R. Crim. P. 16(d)(2) authorizes the district

28  court in cases of non-compliance with discovery obligations to . . . 'grant a continuance,'

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1   'prohibit the party from introducing the evidence not disclosed,' or 'enter any other order that is

2   just under the circumstances.'").

3           Prior to start of trial, a continuance is a common remedy for late disclosures because it

4   "affords time to study the newly emergent information, consider its possible ramifications,

5   change trial strategy (if necessary), assess any potential prejudice, and determine how best to use

6   the information." *United States v. Sepulveda*, 15 F.3d 1161, 1178 (1st Cir. 1993); *see also*

7   *United States v. Anderson*, 509 F.2d 312, 323-24 (D.C. Cir. 1974) ("[A] reasonable time for

8   adequate preparation of the accused's defense is the first essential of trial fairness . . . ."). A

9   continuance is particularly appropriate where the "government has provided no explanation or

10  excuse for making such a voluminous disclosure on the eve of trial," and "the time needed for

11  effective preparation exceed[s] the time actually available." *United States v. Delgado-Marrero*,

12  744 F.3d 167, 198-99 (1st Cir. 2014). In fact, where the government disclosure is made so late

13  that the defendant "c[an] not take advantage of the benefits of the evidence in the absence of a

14  continuance," a court's failure to grant a continuance may be reversible error. *United States v.*

15  *Olson*, 697 F.2d 273, 275 (8th Cir. 1983); *see also United States v. Williams*, 576 F.3d 385, 391

16  (7th Cir. 2009) (failure to grant a continuance on grounds of late-disclosed evidence was abuse

17  of discretion). In those circumstances, "a ruling which denies a timely motion for continuance

18  has the same prejudicial impact upon due process [as would the prosecutor's complete failure to

19  disclose]." *Olson*, 697 F.2d at 276.

20          A continuance is such an obvious remedy for late-disclosed materials that many courts

21  have held that a defendant's failure to seek a continuance in these circumstances waives any

22  claim of prejudice. *See, e.g.*, *Sepulveda*, 15 F.3d at 1178 ("When discovery material makes a

23  belated appearance, a criminal defendant must ordinarily seek a continuance if he intends to

24  claim prejudice. . . . As a general rule, a defendant who does not request a continuance will not

25  be heard to complain on appeal that he suffered prejudice as a result of late-arriving discovery.");

26  *United States v. Spry*, 238 F. App'x 142, 149 (6th Cir. 2007); *United States v. Williams*, 132 F.3d

27  1055, 1060 (5th Cir. 1998); *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

**B.     The Government Has Produced Critical Evidence on the Eve of Trial**

We provide the following five examples to show how this late-revealed evidence touches on the core legal issues in the case and will need to be assimilated into the defense case.[4]

*1.     Mens Rea:  Insufficient Evidence to Prove a Crime*

The first document is perhaps the clearest example of *Brady*.  In it, the then-lead prosecutor told a PHMSA employee who was working closely with prosecutors—so closely that he appears to have been providing pages and pages of "proposed" grand jury questions for a potential witness—that the government had determined it did not have sufficient evidence to prove that the PG&E executive in question had committed a crime.  Toney Decl., Ex. 1.  She went on to offer to "talk further" with him "at any time" to explain the government's reasoning.

**From:** Geis, Stacey (USACAN) [mailto:Stacey.Geis@usdoj.gov]
**Sent:** Wednesday, November 06, 2013 6:16 PM
**To:** Katchmar, Peter (PHMSA)
**Subject:** RE: Proposed Questions

Pete – this is great.  thx.  and, please call me at any time if you want to talk further about Fassett.  We are re-evaluating what to do with him, but in the end, for reasons I am happy to discuss with you further, we do not believe there is sufficient evidence to prove BRD that he committed a specific crime…

**First produced April 8, 2016:**  This correspondence—which has been in the DOJ's files since it was sent on November 6, 2013—was first produced to the defense on March 1, 2016 *with this crucial email redacted out*.  Toney Decl. ¶ 2.  In fact, the government produced *six* versions of this email chain in March, each time carefully blacking out this passage.  *Id.*  The government finally produced a fully unredacted version on April 8, 2016.  *Id.*

**Why it matters:**  First, the PG&E executive the prosecutor was discussing had been the head of PG&E's Integrity Management program (the focus of much of the prosecution's case), and also had served as PG&E's representative to the NTSB investigation.  Proof that the government did not believe it could prove a crime against him is highly material *Brady* evidence.

---

[4]     We have limited this discussion primarily to the examples we outlined at the pretrial conference, though there are many more.  None of these materials are from the 110,000 pages produced on Monday, which we have only begun to digest.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1   The email is a party admission that after years of investigation, the evidence shows that a central

2   defendant employee, in charge of establishing and implementing the policies at issue here, did

3   not commit a crime in doing so.  The reasons that the prosecutor and case agent discussed, of

4   course, is also *Brady* evidence which has never been disclosed.

5        Second, it elucidates why the government is attempting to proceed  on an unprecedented

6   "collective intent" theory, which we have briefed previously.  Dkts. 127; 310 at 4-9.  Had the

7   defense received this evidence "at the earliest feasible opportunity," it would certainly have

8   bolstered its requests for grand jury transcripts and motions to dismiss related to this

9   prosecution's novel theory of intent.  Third, it puts the lie to the government's repeated claim

10  that PHMSA is not "part of the prosecution team."  Dkt. 78 at 5.  Because the unredacted emails

11  show PHMSA employee Peter Katchmar (who was also PHMSA's representative to the NTSB

12  investigation) working  closely with the prosecutors, it appears that the government told the

13  Court PHMSA was not part of its team in order to avoid having to seek discovery from that

14  agency.[5]  Finally, the fact that the trial team redacted this *six* times demonstrates either that the

15  government intentionally concealed it or is so wedded to its view of the case that it cannot

16  identify *Brady* and Rule 16 material.  Either way, the government cannot be left to self-identify

17  evidence material to the defense on this record.

18              *2.    Clarity of the Regulations*

19       As part the discovery motions it brought a year ago, the defendant sought agency

20  interpretations of the charged regulations, arguing that the regulations' ambiguity could preclude

21  a finding that any of its employees willfully violated them.  Dkt. 103 at 8.  The Court agreed,

22  ruling that "the clarity of the regulations and the reasonableness of PG&E's interpretations are

23  still at issue" in this case and ordering the government to produce them.  *Id.* at 9, 29-30.  The

24

25  [5]   We have asked the government whether Katchmar is on its Rule 6(e)(3)(B) disclosure list, as
26  he clearly received grand jury materials.  The government has refused to say one way or another.
    We moved for this list before Judge James, who declined to order its production based on an
27  apparent misunderstanding that we were seeking a list of grand jury witnesses.  Dkt 419 at 22.  If
    Katchmar is not on the Rule 6(e) list, then it appears the prosecutors violated that Rule.  If he *is*
28  on the list, then it is hard to conceive how the government could have told the Court PHMSA
    was not on the "prosecution team."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1    Court reiterated this point in ruling on defendant's motion to enforce that order five months ago.

2    Dkt. 195.

3          The government has long dismissed this argument—at the same time it resisted providing

4    the relevant discovery.  We now have a good sense why.  The recent production reveals that,

5    during the investigation, the prosecution team itself was deeply concerned about how PHMSA

6    itself had been interpreting the regulations, and late in the investigation, it sent PHMSA counsel

7    a list of ten detailed questions about the core legal issues in the case.  Toney Decl., Ex. 2.

8    Among other topics, the questions pertained to PHMSA's positions on MAOP plus 10%, on an

9    operator's failure to maintain pressure test records for transmission lines, and whether PHMSA

10   believed or stated ECDA was an acceptable assessment method for all segments of Line 132,

11   including segment 180.  *Id.*

12         **First produced January 2016:**  The government first produced a version of this

13   document on January 25, 2016.  Toney Decl. ¶ 3.  Because we were unable to identify any

14   follow-up correspondence in the government's productions, we asked the government whether

15   and how PHMSA ultimately responded.  *Id.*  On *April 7*, the government produced an email

16   dated December 17, 2013 from the former lead AUSA attaching PHSMA's answers and

17   indicating that the team would be talking with a PHMSA lawyer "in a few hours."  *Id.* ¶ 3 &

18   Ex. 3.  These materials, showing the final answers of PHMSA in-house lawyers, were not in the

19   original February 22 "Jencks" production.  *Id.* ¶ 4.

20         **Why it matters**:  As the Court has noted, the ambiguity of the regulations is a core

21   defense in the case.  Proof that the government itself had questions about what the regulations

22   meant and whether PHMSA would agree with the prosecutors' hoped-for interpretation of those

23   regulations is critical defense evidence.  Indeed, it calls into question the propriety of bringing

24   this novel prosecution in the first instance.  That the government would sit on this evidence—

25   which was in its own files, and required no assistance from PHMSA to obtain—for months and

26   months after this Court's ordered its production is baffling.  Dkts. 103, 195.

27

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1
       *3.  Prior PHMSA Enforcement Activity*

2
   As with the agencies' interpretations of the regulations, the government has also resisted

3
producing discovery regarding PHMSA's dealings with other operators and, in particular,

4
PHMSA's enforcement actions—or lack thereof—concerning the charged regulations.  It has

5
dismissed this defense as "a position no different from a student caught cheating on a test who

6
complains that all the other students were doing it, too."  Dkt. 97 at 2 & n.2.  Indeed, it moved *in*

7
*limine* on January 11, 2016 to exclude what it characterized as the "non-defense" of "other

8
people were doing it too!"  Dkt. 236 at 4.  It has also asserted—in court—that gathering these

9
PHMSA materials "would have the potential of shutting down the small agency."  Dkt. 96 at

10
25:10-13.  And it complained that the defense's request would "force the government to canvass

11
other pipeline operators for their interpretations of the relevant regulations."  Dkt.  97 at 3. Once

12
again, the Court disagreed and ordered its production.  Dkt. 103.

13
   Yet discovery disclosed since the government's motion *in limine* proves that the

14
prosecution needn't have looked much further than its own files, at least as a starting point.  In

15
May 2013—more than two years before the government claimed such evidence was "wholly

16
irrelevant"—the lead AUSA emailed PHMSA employee Katchmar and retained government

17
consultant David Berger regarding "Other operators . . . ."  Toney Decl., Ex. 4.  She asked if it

18
would be possible "to get a summary of other pipeline operators and their handling of IMP as it

19
relates to ECDA, ILI and HT" and wrote "[i]t would also be great to confirm that no other

20
companies of which we are aware conducted planned pressure increases like PG&E."  *Id.*  On

21
May 16, Katchmar responded, attaching three reports from something called the "PHMSA

22
Pipeline Data Mart," which he explained are enforcement cases that PHMSA issued citing the at-

23
issue regulations 49 C.F.R. §§ 192.917(e), (e)(3), and (e)(4).  *Id.*

24
   The next month, Katchmar forwarded nine different emails attaching more than 3000

25
pages of "case files" of PHMSA's enforcement of §§ 192.917(e), (e)(3), and (e)(4).  Toney

26
Decl., Exs. 5-13.

27

28

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

| | |
|---|---|
| **From:** | Peter.Katchmar@dot.gov |
| **Sent:** | Wednesday, June 12, 2013 9:06 AM |
| **To:** | Geis, Stacey (USACAN) |
| **Cc:** | Morris, Brett (USACAN); Halberstadt, Deborah (USACAN); Deborah.Halberstadt@doj.ca.gov; Brett.Morris@doj.ca.gov; lisa.glazzy@oig.dot.gov |
| **Subject:** | E-Mail #1 - Attachments from Case Files PHMSA issued that cited 192.917(e), (e)(3), and (e)(4). |
| **Attachments:** | How to UNZIP.html; SecureZIP Attachments.zip |

There will be a number of e-mails with 37 documents from different cases.  I apologize that these are not in any order.  I could not rename the files when I downloaded them.  Please print each one out and there should be a case # on each document so you can put them together.

Please let me know if you think additional files would be beneficial.  I can download entire case files but I have to do it by document.

**First produced February 2016:**  The government first produced the May 2013 email on February 22, 2016 with substantial redactions.  Toney Decl. ¶ 5.  A fully un-redacted version was not produced until April 8.  *Id.*  The June 2013 emails were first produced on February 13, 2016—a month after the government moved *in limine* to exclude all such evidence.  *Id.*  ¶ 15.

**Why it matters**:  The Court held that PHMSA's statements and actions regarding other operators, and other operators' interpretations of the regulations, are material to PG&E's defense.  Dkt. 103 at 8-9.  That the government itself posed the same questions to PHMSA about its enforcement history on the charged regulations—and got such ready responses—proves that the Court, and the defense, were right.  Had we had this evidence earlier, it surely would have affected our prior briefing to the Court, including substantive motions to dismiss and motions *in limine.*  This highly material evidence was sitting in the USAO's own files while the prosecution team told the Court that seeking such evidence for the defense would be a frivolous and time-consuming wild goose chase.

### 4. PG&E Knowledge Of Seam Threats

Another key piece of evidence the government just produced is email correspondence from November 2013 between the prosecutors and their retained consultant Berger.[6]  Toney Decl., Ex. 14.  The prosecutor inquires: "Do we have any indication other than the Lui spreadsheet that PGE was aware of these seam threats prior to the 2011 BAP ie [sic] prior to San

---

[6]   As with PHMSA's Katchmar, though Berger received grand jury materials, we do not know whether he was on the government's Rule 6(e)(3)(B) disclosure list.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1    Bruno?"  *Id.*  Berger responds:  "To the best of my knowledge, prior to the 2011 BAP PG&E did

2    not recognize that they had unstable manufacturing issues/threats on any of their pipelines in

3    HCAs."  *Id.*

4           **First produced March 2016:**  The government first produced this document on February

5    22, 2016 with the entirety of Berger's email redacted.  *Id.* ¶ 16.  It later produced at least three

6    additional versions—each time, carefully redacting his email.  *Id.*  On March 23, 2016, the

7    government produced yet two more versions.  *Id.*  In one, portions of the discussion regarding

8    manufacturing threats remained redacted.  In the other version, the entirety of Berger's email was

9    unredacted.  *Id.*  A completely unredacted version of the entire chain was finally produced on

10   April 8, 2016.  *Id.*

11          **Why it matters**:  Like the first example, *supra* at 11-13, this email is evidence that the

12   government's own paid consultant believed that PG&E did not believe it had activated

13   manufacturing seam threats based on pressure exceedances it had experienced.  Most of the

14   counts in the indictment, one way or another, are based on the government's theory that *any*

15   pressure exceedance on certain types of pipe activated manufacturing seam threats and that

16   PG&E knew it.  Superseding Indictment (Dkt. 22) ¶¶ 37, 38, 57, 58, 71, 73.  The fact that the

17   government's own paid consultant—who was simultaneously working as a paid expert for a

18   party in the CPUC OIIs against PG&E—did not believe PG&E accepted the prosecution's theory

19   is powerful evidence supporting defendant's position.  And once again, the government's

20   repeated, careful redactions of this evidence suggests either willful concealment of defense-

21   favorable evidence, or an inability to understand what constitutes evidence favorable to the

22   defense.

23                      5.      The 10% Issue and BP

24          The Court is familiar with the "10% buffer" issue and it is a focus of the government's

25   pending motion *in limine* #3.  Dkts. 236 at 4; 300 at 6-8.  The 10% issue, of course, is also the

26   focus of Count One's obstruction charge.  Briefly, when grappling with the pressure exceedance

27   issue, PG&E engineers understood that major pipeline operator BP utilized a "10% buffer" in its

28   integrity management policies and that PHMSA had reviewed those policies.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1   　　　The government has gone to great lengths to distinguish this, arguing in its pending

2   motion *in limine* that a BP manager told PHMSA's Katchmar that BP's policy was not actually

3   to use its 10 percent cushion.  Dkt. 300 at 7.  What the government did not tell the Court is that

4   Katchmar contacted BP and obtained that disavowal at the urging of the prosecutors

5   investigating this case.  In an unredacted April 2013 email we received for the first time on

6   March 6, 2016, the lead AUSA asked:

7   **From:** Geis, Stacey (USACAN) [mailto:Stacey.Geis@usdoj.gov]
    **Sent:** Tuesday, April 02, 2013 11:48 AM

8   **To:** Glazzy, Lisa A <OIG>; Katchmar, Peter (PHMSA)
    **Subject:** FW: PG&E's Blatant Disregard for PHMSA Code Language

9   **Importance:** High

10  Thanks Lisa and Pete.  So, Pete, can you help us understand better this BP matter to which they refer
    in the memo?  Another witness has also referenced how PHMSA handled the BP case as a

11  rationalization for using the over 10% MOP theory.  Did PHMSA at any point say it was okay to
    interpret the reg as such?  Did BP do it?  If so, were they found in violation or otherwise told by

12  PHMSA they can't interpret the reg that way?  Is there an audit or documents we could review?  We
    definitely need to know how PHMSA handled the issue with BP.  Thanks!

13

14  Toney Decl., Ex. 15.  The government also had copies of the actual BP policies with the 10%

15  buffer in its possession—as Katchmar provided them in 2013.  *Id.* ¶ 18.  Yet it did not produce

16  these to the defense until February 13, 2016, a full month after filing its motion *in limine*.  *Id.*

17  　　　**Why it matters**:  the 10% issue is at the core of the government's case.  The recently-

18  disclosed evidence proves that the government was concerned about it and even went to such

19  lengths as to have Katchmar contact BP directly.  The government concealed this information—

20  as well as the actual BP 10% policy document—from the defense until after filing its motion to

21  exclude such evidence.  It is now clear why.

22  **IV.   RELIEF REQUESTED**

23  　　　In light of these eleventh-hour disclosures of evidence critical to the case, the defendant

24  needs time to process the information and adjust its trial strategy.  We are working diligently to

25  review this recent discovery as we noted in yesterday's update.  Dkt. 450.  Given the volume and

26  import of the evidence, the defendant estimates that it would need a minimum of a six week

27  continuance of the trial date to assimilate this information into the defendant's trial strategy,

28  opening statement, exhibit list, witness list, and cross-examination plans.  However, this is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH

1  complicated by the fact that lead defense counsel Steven Bauer has another trial set for July 27,

2  2016 as noted at *supra* at 2 n.1.

3       In addition to a continuance, the defendant also seeks:  (1) an order that the government

4  produce all attachments to the so-called "Jencks" productions and (2) that the Court reaffirm its

5  prior order requiring the government to search for and produce all *Brady* material.

6  **V.      CONCLUSION**

7       The Court's hope that its five week continuance would "guarantee that the many

8  unresolved issues in this care are given full and fair consideration before the start of trial" cannot

9  be achieved before April 26.  Given the massive volume of critical materials produced in the last

10  month, the defendant cannot make effective use of it at a trial in less than two weeks' time.  This

11  is not a situation of the defendant's making; we have sought this important evidence from the

12  very beginning of the case.  At every turn, the government has resisted turning it over.  The

13  Court should allow the defendant the minimal amount of time to digest the material and adjust

14  trial strategy accordingly.  We respectfully, and regrettably, ask for a continuance.

15

16  Dated:  April 15, 2016                                      Respectfully submitted,

17                                                                     By _____/s/_____

18                                                                            Steven M. Bauer
                                                                             Margaret A. Tough
19                                                                          LATHAM & WATKINS LLP

20                                                                            Kate Dyer
                                                                             CLARENCE, DYER & COHEN LLP
21
                                                                             *Attorneys for Defendant*
22                                                                          *Pacific Gas and Electric Company*

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEF.'S MOTION TO CONTINUE TRIAL DATE FOR
LATE-DISCLOSED EVIDENCE
CASE NO. CR-14-00175-TEH