BRIAN J. STRETCH (CABN 163973)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

HALLIE MITCHELL HOFFMAN (CABN 210020)
HARTLEY M. K. WEST (CABN 191609)
JEFFREY B. SCHENK (CABN 234355)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7129
    Fax: (415) 436-7234
    hallie.hoffman@usdoj.gov
    hartley.west@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | CR 14-00175 TEH |
|---|---|---|
| Plaintiff, | ) | UNITED STATES' AMENDED WITNESS LIST |
| v. | ) | |
| PACIFIC GAS AND ELECTRIC COMPANY, | ) | |
| Defendant. | ) | |

    The United States hereby submits this Amended Witness List, giving notice to the Court and to defendant Pacific Gas and Electric Company of the witnesses it may call in its case in chief at the trial in the above-captioned case. This list is intended to be inclusive and does not necessarily reflect the order in which witnesses will be called. The government may not call all of the witnesses on this list. The government may seek to supplement this list for good cause as trial preparations progress, and will notify the defendant of any changes to its witness list.

/ / /

/ / /

/ / /

U.S. AMENDED WITNESS LIST
CR 14-00175 TEH

| WITNESS NAME | SUMMARY OF TESTIMONY |
|---|---|
| David Aguiar | ECDA and all preassessment work; assessments of manufacturing threats; pipeline survey sheets; integrity management; GIS; compensation |
| William Arndt | PG&E's 2008 and 2009 budget reduction and expense walk through; compensation |
| Todd Arnett | Record keeping integration; GIS; assessment decisions; planned pressure increases; integrity management decision-making process; communications, decisions, practice, and policy regarding maintaining maximum operating pressure on pipelines; compensation |
| Les Buchner | Role at PG&E, including promotion to Senior Manager for Gas Program and Performance Management; budgetary matters (process, requests, reductions, deferred work and IM spending); performance metrics; compensation |
| Brian Cherry | Discussions and representations made by PG&E to the CPUC and the NTSB post the San Bruno explosion, including about PG&E's findings and definitions concerning lines that had been overpressurized, planned and unplanned pressure increases, state of records, not considering a line overpressurized unless the pressure exceeded the MOP/MAOP + 10%, MAOP validation, and the NTSB's Investigation |
| Ravindra Chhatre | NTSB's investigation of PG&E following the San Bruno explosion as the "investigator in charge"; the launch of investigation into the explosion (team and purpose), the on-site investigation of the explosion, the party member system and obligations of a party member, the issues investigated, the focus areas of the investigation, witness interviews, data requests and responses, urgent recommendations issued, removal of PGE's party representative, the NTSB hearings, factual reports, receipt of the April 6th, 2011 letter and actions taken, late disclosures made concerning the 1988 leak on Line 132, and timeline of the investigation |
| Paul Clanon | Executive Director of CPUC 2007-2014; CPUC relationship with PG&E; CPUC investigations and audit of PG&E following San Bruno explosion, including data requests, data responses, directives, penalties, and other communications; PG&E's focus on reducing costs rather than prioritizing safety; PG&E's planned pressure increases, pressure exceedances, MAOP and MOP validations, threat assessments, record keeping, and Line 147 errata |
| Daniel Curtis | Role in the Integrity Management group at PG&E; choosing assessment methods of pipelines, ranking risk of pipelines, assessing threats on pipelines, and record keeping; compensation |

| WITNESS NAME | SUMMARY OF TESTIMONY |
|---|---|
| Peter Darbee | PG&E's representations to shareholders, investors, employees, regulators, and the public concerning the objectives, focus, goals, and/or policies of the company, both before and after the San Bruno explosion; PG&E 10Ks and Proxy Statements; compensation |
| Brian Daubin | Participation in NTSB investigation; all communications and discussions concerning RMI-06, its revision, and its production; compensation |
| Frank Dauby | Knowledge of and role in inline inspections and ECDA; the Pipeline Safety Act; the Baseline Assessment Plans; budget; hydrotesting; RMP-06; GIS; the pipeline features list; the planned pressure increase program; Subpart O; compensation |
| Alan Eastman | Role as the manager of Risk Management at PG&E; the GPRP and switch to RMP; creating the Baseline Assessment Plans for lines; record integration; considerations in determining the proper assessment method; consideration of various threats on a line; the development of EDCA; and PG&E's incorporation of Subpart O into its IM program; compensation |
| Robert Fassett | PG&E's integrity management program; GIS; ECDA; ILI; budget; planned pressure increase program; Line 132, Segment 180; compensation |
| Sandra Flores | Subpoenas to PG&E and PG&E responses; summary witness regarding strength test pressure records, overpressures, risk spreadsheets, BAPs, LTIMPs, and IMPs |
| Jeffrey Gilliam | PHMSA inspector; participating in an audit of PG&E's gas integrity management, instruction and training that he provided regarding PHMSA integrity management regulations and what the regulations required operators to do, how operators can seek clarification of the regulations, how he advised utilities regarding over pressurizations and activation of threats, and what FAQs are and their purpose |
| David Harrison | Discoveries made when the L147 pipe segment was unearthed; GIS and record integration; compensation |
| William Hayes | PG&E party member to the NTSB investigation; his qualifications and how he became PGE's NTSB party member, and the April 6, 2011 letter, signed by him, at the heart of the obstruction count and events/conversations/emails surrounding the letter's transmittal and content; other obstructive conduct by PG&E during NTSB investigation; compensation |

U.S. AMENDED WITNESS LIST
CR 14-00175 TEH                                     3

| WITNESS NAME | SUMMARY OF TESTIMONY |
|---|---|
| Todd Hogenson | Responsibilities as Director of Pipeline Safety Enhancement Plan; GIS; the planned pressure increase program; resources dedicated to his group; integrity management; inline inspections; hydrotesting; HCA pipelines; enterprise risk management; compensation |
| Manly Kirk Johnson | PG&E Vice President and spokesperson; participation in NTSB investigation; PG&E record-keeping, MAOP and MOP verification, Baseline Assessment Plans, and assessment methods; compensation |
| Peter Katchmar | PHMSA investigator and as the PHMSA party member to the NTSB investigation; learning of PG&E's policy documented in RMI-06 (the version that was submitted to the NTSB as a data response and used in the NTSB hearings) regarding PG&E's planned pressure increases and when PG&E considered threats on a line activated (the so called "plus 10% policy"), and what he did as a result of learning of RMI-06 |
| Andrew Kelly | Background regarding transmission, distribution, and distribution feeder mains; PGE's planned pressure increases, clearance process, and pressure exceedances, including for Line 132; MAOP, MOP, and validation; GIS and other record keeping systems, including deficiencies; leaks, leak repairs, and records; threat assessments, methods, and challenges; LTIMPs; compensation |
| Stephen Klejst | Director at NTSB during investigation of the San Bruno explosion; purpose and focus of the investigation, why he chose to launch the investigation, his role in the investigation, urgent safety recommendations issued to PG&E, his role in the termination of the PG&E party member representative to the investigation, and the NTSB generally, its mandate, when it launches an investigation, and how it conducts investigations |
| Chih Hung Lee | PG&E's threat assessment methods and challenges (DA, ILI, Hydrotest); RMP-06 and RMI-06; LTIMP; reliance on GIS; record keeping deficiencies; accuracy and accessibility of A-Forms; pressure test records; and MOP and MAOP determinations; compensation |
| Howard Lubow | Expert witness in the field of utility finance and the rate-making process; the rate-making process; how a utility can achieve an actual return exceeding an authorized return; PG&E's actual rates of return versus authorized rates of return; PG&E's compensation structure based on PG&E's 10K and Proxy Statement filings |

| WITNESS NAME | SUMMARY OF TESTIMONY |
|---|---|
| Calvin Lui | PG&E's tracking of pipeline operating pressures, seam types, and pressure exceedances; SCADA reports; planned pressure increases and 10% pressure exceedances; RMI-06; application of Pipeline Safety regulations (Subpart O) and FAQs; PG&E's Baseline Assessment Plans; pipeline threat assessment methods; HCA analysis; incomplete and inaccurate data in GIS; CPUC 2010 audit; threat and risk assessments; MAOP validation efforts after San Bruno explosion; compensation |
| William Manegold | PG&E's Baseline Assessment Plans; threat identification, assessments, and assessment methods; HCAs; application of Pipeline Safety regulations (Subpart O) and FAQs; CPUC investigation and audits; NTSB investigation; incomplete and inaccurate data in GIS and other record keeping; RMP-06 and RMI-06; PG&E's planned pressure increases and pressure exceedances; leak repairs; compensation |
| Miranda Martin | Drafting Technician II for San Mateo County Assessor's Office; certified Assessor Maps in effect on September 9, 2010 |
| Frank Maxwell | Operating expenditures and limitations in gas transmission and distribution in 2007 through the San Bruno explosion and beyond; discussions regarding assessment methods and budgetary concerns during integrity management team meetings; compensation |
| Leslie McNiece | Role at PG&E, her efforts to draft the Records & Information Management Standard and Policy, her knowledge of the state of PG&E's records, including the Corporate Records Center, resistance she faced, information from her journal and why she kept one, and audit committee and Board presentations she made |
| Lawrence Medina | Responsibilities at PG&E; transmission pipeline records; physical moves of the records; memoranda he drafted while at PG&E; contact with PG&E post-San Bruno; compensation |
| William Morrow | Company-wide messages that he sent out and his participation in, and presentations given at, a 2008 Utilities Officer's offsite; compensation |
| Eugene Muse | Role at PG&E as part of the Integrity Management team; record gathering and integration; GIS; assessment methods; planned pressure increases; not considering a pressure exceedance over MOP/MAOP as activating a threat unless the exceedance was MOP plus 10%; tracking the MOPs of pipelines; drafting a policy to address the planned pressure increases and maintaining MOP which included the +10%; instructing engineers about the planned pressure increases; compensation |

U.S. AMENDED WITNESS LIST
CR 14-00175 TEH                                5

| WITNESS NAME | SUMMARY OF TESTIMONY |
|---|---|
| Steven Nanney | Expert testimony explaining purpose, meaning, and requirements of Pipeline Safety Act regulations 49 CFR §§ 192.517, 192.709, 192.917, and 192.919; development of the regulations; ASME B31.8S; Frequently Asked Questions (FAQs) |
| Matthew Nicholson | NTSB's investigation of PG&E following the San Bruno explosion; NTSB's on site investigation of the explosion; PG&E as a party member; issues investigated related to integrity management such as record keeping; record integration; threat assessment; planned pressure increases; determination of MOP/MAOP; witness interviews; data requests and responses; late disclosures made concerning the 1988 leak on Line 132 |
| Sutton Peirce | Visual Information Specialist, U.S. Attorney's Office; map showing PG&E transmission pipelines at issue in this case |
| Paul Penny | CPUC's 2011 audit of PG&E, including PG&E's over-pressurizations; PG&E's risk management program and RMI-06 policy |
| Sara Peralta | Role as supervisor and manager in PG&E's integrity management group; PG&E's planned pressure increases and pressure exceedances; RMP-06 and RMI-06; application of Pipeline Safety regulations (Subpart O) and FAQs; PG&E's Baseline Assessment Plans; pipeline threat identification, assessments, and assessment methods; incomplete and inaccurate data in GIS and other record keeping; CPUC investigations and audits; NTSB investigation; threat assessments after San Bruno explosion; MAOP and MOP validation; A-form processing; leak repairs; HCAs; compensation |
| James Ruane | Mayor of San Bruno; deadly explosion in San Bruno on September 9, 2010; authenticating map showing damaged homes (with no distinction between damaged versus destroyed) |
| Edward Salas | Gas Transmission risk management; finance and budget; CIMT meetings; board meetings; NTSB hearings; NTSB urgent safety recommendations; overpressurizations; RMI-06; hydrotesting; compensation |
| Charles Tateosian | Head of Gas System Design; findings about, discussions concerning, and recommendations made regarding pipeline integrity, welding methods, pipe failures, records and strength tests |
| Philip Villanueva | U.S. Attorney's Office financial analyst; summary witness regarding PG&E's assessments and replacements in its Baseline Assessment Plans and PG&E's gross gains based on his review of PG&E records |

| WITNESS NAME | SUMMARY OF TESTIMONY |
|---|---|
| Scott Waldvogel | San Bruno firefighter; responded to deadly explosion in San Bruno on September 9, 2010; authenticating map showing damaged homes (with no distinction between damaged versus destroyed) |
| Chris Warner | Role as a manager of Integrity Management and Compliance at PG&E; the risk management program, IM budget and compensation, record keeping systems, decisions regarding assessment methods, planned pressure increase program; treatment of activated threats on pipelines; and later role as a consultant to PG&E while working at the Mears Group, including work that he performed for PG&E regarding EDCA, in anticipation of a May 2010 CPUC audit, and post San Bruno; compensation |
| Michael West | Line 132 survey sheets from 11/2003 and 12/2003; process by which data was integrated into GIS; document retention policy after the San Bruno explosion; compensation |
| PG&E Records Custodian | What records were produced, and not produced, by the company in response to subpoenas, lay the foundation for the records to be admitted as business records should the records not be admitted as party-opponent admissions |
| CPUC Records Custodian | Lay the foundation for CPUC records to be authenticated as official government records |

BRIAN J. STRETCH
United States Attorney

Dated:   April 25, 2016

_____/s/_____
HALLIE MITCHELL HOFFMAN
HARTLEY M. K. WEST
JEFF SCHENK
Assistant United States Attorneys